All right, we'll first hear from Mr. Green. May it please the court, Sheridan Green for the appellant. This case is about extraordinary ability. Mr. Amin submitted evidence that he met the extraordinary ability criteria in 8 CFR 204.5 and that he therefore qualifies for an immigrant visa. The government disagreed. It decided that even though he met three out of ten criteria, which is the regulatory threshold, he still had not reached the level of sustained acclaim. The government's decision makes numerous reversible errors. Most importantly, it relied on a policy memo, which enacted a substantive rule without complying with notice and comment procedures. This is by itself a basis for reversal because the APA allows this court to hold unlawful and set aside agency action findings and conclusions found to be not in accordance with law. And one of the things that I want to bring especially to this court's attention is that this particular policy memo, it's a 2010 policy memo, I'll call it the policy memo or the Kazarian memo, does not pass this court's test in Texas, the United States from 2015. Texas, the United States was the DAPA case. In that case, the court determined that the government's deferred action for the parents of childhood arrivals memo was actually a substantive rule and therefore it needed to comply with notice and comment procedures. Specifically, the court pointed out that that memo was, the memo was, the memo did not allow the officers to utilize any discretion. In other words, the memo was binding on the officers. And even in fact, in your. It also found that it was a, go ahead. Oh, I was going to say in your dissent, Judge King, you disagreed with that and you looked at that memo and you said that the, that there was discretion written into the memo. In fact, specifically you said that this is a memo that was 5 pages long and that it used the word discretion 10 times. Well, the 2010 Kazarian memo that we're talking about is a 25 page memo and it doesn't use the word discretion once. It doesn't talk about decisions being made on a case by case basis. It is a substantive rule taken from a Ninth Circuit case called Kazarian and simply applied nationwide and it does not pass. But for it to be this type of new policy, you have to show some change with the regulation, right? You're saying it's inconsistent with the regulation in what way? It's inconsistent with the regulation because it adds a second step to the adjudication process. Okay, I want to ask about, so you're saying the regulation automatic, if you get three of these criteria, in your view, the regulation says you get the visa? I wouldn't go quite that far, but the regulation doesn't mention a second final merits determination. So the regulation, it describes. The regulation does say, let me just raise the concerns I have, you can address them. It does say, all it says is the initial evidence, a petition for an alien of extraordinary ability must be accompanied by evidence that the alien has at least three of the following. I mean, it reads to me almost like your application to Harvard Law School needs to have a letter of recommendation, an LSAT score and a transcript. That certainly doesn't mean you're going to get into Harvard Law School if you check off all those boxes. And so the question is, what do you do when the boxes are all checked? And I think the best way to understand Kazarian is in opposition to an earlier case called Bolotini because they sort of take different views with relation to how much emphasis they put on the three out of ten criteria. And what Kazarian says is that, and let me describe Kazarian. But so before you do this, you do, you're saying that if you get three of these criteria you should automatically win or you're acknowledging there has to be. No, that's closer to the Bolotini framework. So in the Bolotini framework, it says if you get three out of ten criteria, then you should be, the alien should be deemed to have extraordinary ability, unless there's some problem with the evidence. So in other words, in the Bolotini formulation. Where's that in the regulation? It's not in the regulation anywhere. I mean, it is an interpretation of what do we do when the alien shows this evidence? How far, how close to the goal line is the alien at that point? And so what Bolotini says, and this is in contrast to. Right, but I'm still trying to figure out. The regulation says, I think you've agreed. You initially have to make this showing. Correct. Your application needs to have this or you're going to lose. Correct. But it doesn't say whether you're ultimately going to win or not. So how is having this second step, which determines whether you ultimately do meet that very high standard, how is that inconsistent with the regulation? Because it is a, it's a formalized second step. So, so the, the, the Kazarian memo formalizes that there always have to be these two steps. And, and Kazarian, what Kazarian says is that the initial decision as to the three out of ten criteria is nothing but an antecedent procedural question. And so there's very little emphasis put on the three out of ten criteria in Kazarian. Whereas in Bolotini, at least the way that, that I read it, all the emphasis, all the, all of the, the, the government's questions and all of the government's discretion would come in at that stage in, in, you know, essentially fighting us, giving us the third degree on whether we actually meet the three out of ten criteria. The problem in this case, your honors, is that the government's approach is, is a, is a weird hybrid of both of those theories. They, they, they put out this Kazarian memo, and what Kazarian says is initially you're just going to count the evidence, and then you're going to move on to this final meris determination. But what the government actually does is they give us a final meris determination initially on each criteria, so the, the best example of this is if, if you look at the denial in the case, and I believe it's on the record, it's pages 208 through 211. It's three and a half pages, it's, it's single spaced, it's like seven point font, and it's all dedicated towards the Kazarian step one, supposedly, Kazarian step one determination of whether we've checked that box. So the problem is, is they're, they're, they're doing that final meris determination, but they're doing it all in step one. And then, if we manage to get past that, if we get to the goal, then they move the goal posts, and they say, well, okay, now we concede finally these three out of ten after all of this back and forth, but now you've got to pass through the final meris determination, and then they give us the same objections again, and then they deny it on the final meris determination. We think that the bulletini framework is a better framework because it only has that one step. They give us the third degree, they fight us on the three out of ten, but if we meet the three out of ten, then the alien should be considered an alien of extraordinary ability, unless there's something wrong with all that evidence. I understand why you like that other case better, but I'm still struggling to see, why is the policy memo inconsistent with this regulation? That if, if the regulation says initial evidence, to me that means there's a post-initial step that has to be undertaken. Well, that's, I mean, that's, that's the interpretation that Kazarian would, would adhere to, but it's not the interpretation that bulletini would adhere to. And, and, and my answer to that is that the three out of ten must mean something, right? There's a reason why it's three out of ten and not four out of ten, or two out of ten, or five out of ten. But it's, but it's at least three, which is also inconsistent textually with your argument, because, well, if three automatically got it for you, why would you ever need to do more than three? I mean, at least three suggests, you need at least three, but it's going to beef up your application if you can do five, six, seven, right? That, that could be, but it also could, it also could indicate that maybe you could present three out of ten, but maybe the evidence is internally inconsistent. Maybe the evidence is, is not credible. Maybe there are other reasons why three out of ten shouldn't do it, but meeting three out of ten, we shouldn't have to go through a whole other additional final merits determination, because that, that abnegates the entire regulation. Why did we ask any questions about three out of ten if we were just going to let the officer do whatever they wanted anyway? The, the government has, has countered our argument that this is a, a substantive rule that needed to go through notice and comment by saying it could be upheld as an interpretative rule, but that's clearly not the case. The policy memo does not interpret anything, and it's binding on all USCIS officers. Rather than interpret anything, it establishes this adjudicatory framework, which differs from the regulations, because as I said, it adds an extra step. One of the things that's very interesting that we found in this case is there's actually a prior version of the, the Kazarian memo. The, the Kazarian memo came out in December of 2010. There's a version from August of 2010, which was in effect in the interim, and if you put the two versions side by side, someone has gone through, presumably a team of lawyers has gone through the, the August version, and they've scrubbed anything that looks like binding language. But the, the substance and the structure of the two memos remain exactly the same. The, the court talked about, in, in Texas v. U.S., it talked about the agency's providers providing pretext as to why a rule is not a substantive rule, why it's a policy, or why it's an interpretative rule, but that the court has to look through that pretext. And this, to me, is, is an excellent example of, of pretext. In, in, in one instance, and I can actually provide, I provided a link to the, to the, the, the earlier interim memo in my reply brief, but I can, I can provide it in a 28-J letter if the court would like. But if you, if you compare them side by side, in one sentence, it actually says that this, this rule is applicable to and binds all U.S. CIS officers, and then in the updated version, they've taken out the words and binds. So they're trying to pass it off as a policy or as an interpretation. It's clearly not an, an interpretative rule. I think what the government meant to say was that it was a, a policy statement like the government argued in, in Texas v. U.S. If the court decides that the policy memo can be upheld as an interpretative rule, then it only merits Skidmore deference. And under Skidmore deference, the court should choose not to follow the rule because the agency applies the rule inconsistently, as it, as it did in our own case. Again, rather than doing what Kazarian says to do and engaging in the antecedent procedural question, checking the boxes as to what evidence had been submitted and then moving on to a final merits determination. Instead, we just get two final merits determinations. So even if Kazarian is a good rule, the government's not following it. And that's a reversible error. The government says you didn't make the notice and comment argument in your complaint in district court. What's your response? Correct. So, so what happened in this case is we, we got a denial from, our original denial from USCIS did not reach the final merits determination. It, it gave us, I think, one out of the three criteria. After we filed litigation, USCIS reopened the case, which they often do. And they issued us a new request for evidence and they ultimately issued us a new decision. In that new decision, they had granted us three out of the ten criteria but then denied the case on the, on the full merits determination. When we filed an amended complaint, we did not think to distinguish between the procedural claim and the substantive claim. But we consider that both of those are encapsulated by our, our APA claim, which is that the, the government did not decide this case in accordance with law. Whether that be the substantive law or the procedural law. Also, the government never brought that up below. In fact, we, we argued the procedural claim on the merits. The judge adjudicated the procedural claim on the merits. And if the government had brought it to our attention, that it was not differentiated in the complaint. We could have amended the complaint at the time. So, so our position is that that, that's harmless. Practically speaking, I mean, I understand why your client would want this status more than others. It has some advantages. But, I mean, aren't there a number of other visas? Even if he's not, doesn't meet the extraordinary ability. There's exceptional ability. There's, there's other, all kinds of, all kinds of work visas. What's that? Effectively not for Indians. The, the, of all of the employment-based categories, the only ones that work for Indians effectively is the extraordinary ability category. And the reason for that is because of the, the visa numbers and the backlogs. And there have been various bills presented to Congress, sometimes passed by the House, over the last five years. But nothing has ever come through. The result, and this is. And he's been on a visa currently. What. He's on an H-1B visa. Yeah. I'm talking about permanent residency applications. So the, the most recent statistic that I saw, and I could, I could probably find this, but I don't have it in front of me, is that if an, if someone who's born in India files for a green card in any other category, employment-based category, today he will have that green card in 204 years. So that's why extraordinary ability. But the extraordinary ability, and I'm out of time. You can wrap up. The extraordinary ability rules came out in 1990, and they were intended to make it easier for the officers to adjudicate these cases, not give them this, this amount of, this large amount of, of discretion. That just makes the, the cases more inconsistent and more complicated. But doesn't it have to be discretionary whether someone has, it's such a high category, right? The Einstein visa. Whether someone is so exceptional or so extraordinary, I guess is the right word. I mean, doesn't that ultimately have to be a discretionary? There is, there, there must be discretion involved, but these officers are, are not experts in these esoteric fields. And that's why, and there's comments in the, in the federal regulation. That's why they were given a list, a three out of ten list. So, you know, an educated person could engage to the extent that they could with that record. And so, okay, I see this, I see this, and I see that. That's three out of ten. That's where bulletin comes from. All right. Thank you, counsel. You have your five minutes for rebuttal. Thank you, Your Honor. Ms. Molina. Good morning, and may it please the, please the court. This is a straightforward APA case. It stems from a single count complaint, and it's seeking review of an immigrant visa denial. It challenges three of USCIS's findings. Today, I will discuss these three findings, and first in the merits of the APA claim. Second, I will address the challenge to this two-step framework. And lastly, I will speak about the issue of remedy. So first, to the merits of the claim. The court should affirm the decision below because USCIS's denial provides a rational connection between the evidence in the record and the conclusions it made. And that is all that is required by the APA. So the task today here is not to discuss the weight of each piece of evidence. It is to determine whether USCIS conclusion is rational based on the record. So USCIS made three findings in this case. The first is that Mr. Amin did not reach national or international acclaim, even though the regulation provides for sustained national or international acclaim. USCIS also found that his achievements were not recognized in the field of expertise. He claims that his field of expertise is both business and science. Similarly, USCIS found that he is not one of the small percentage that who have risen to the very top of his field. If this court, in order for Mr. Amin to prevail, Mr. Amin must show that USCIS's decision was arbitrary and capricious as to those three findings. So again, Mr. Amin chose to apply for the most restrictive visa category. And the bar is high because Congress made it that way. Congress specifically mentioned the Nobel Prize as a quintessential bar. But it also, the regulations also provide for alternate ways in recognition that not everybody will win the Nobel Prize. And the record here shows that Mr. Amin is a valuable employee for all of his employers. And one key issue here is that throughout the adjudication, USCIS requested primary evidence of his achievements. And Mr. Amin kept filing amended letters from his acquaintances. And even though USIA specifically requested. For example, Mr. Amin said he helped, he was part of the team that patented the first mobile surfing sulfur unit. And he says there's a worldwide patent pending. So USCIS asked for evidence of that patent. If it's available, he didn't submit it. And over and over again, USCIS explained why the letters from his colleagues or his circle of acquaintances were insufficient, especially in light that he says that there's this primary evidence, the patent. For example, I can think of a case, CZ, in the Northern District of California where the petitioner wanted to receive credit for his patents. And he did because he submitted the actual 13 patents for his inventions. And that is very different than the case here. So this Visa of Extraordinary Ability, it's not about what a petitioner thinks of himself. Or what his circle of acquaintances think of him. The regulations provide that it requires extensive documentation. And that extensive documentation cannot be just the letters from your acquaintances. And Mr. Amin also claims he invented the walking drill and that that was not addressed by the decision of USCIS. Well, he never mentioned the walking drill. The walking drill came into play in Mr. Ion's third letter. Prior to that, the basis for his claim was the DA2 well pads that he invented the DA2 well pads. But USCIS could not have addressed the walking drill because he only submitted it in response to his second RFE. So in his explanation to the second RFE in Mr. Ion's letter, they say that the walking drill was part of the DA2 well project. So at all times, USCIS considered that. And at the final stage, it also acknowledged the walking drill. So in terms of the merits, USCIS considered all the evidence and provided a rational explanation. I want to respond to plaintiff's claim that being Indian requires a 200-year wait. So being Indian does not preclude you from obtaining a benefit. Indeed, Mr. Amin came as an L1 visa holder, which is for managers or executives. And he just stated that he is currently on an H1B visa. So that contradicts Mr. Amin's conclusion. So now moving forward to the challenge to the two-step framework, that was not in the complaint. That was not in the complaint. There were two complaints filed in this case. The operative complaint is the one from 2020. And it's important because what he asked the court to do to strike down the two-step framework is not within the scope of the remedy that he sought in the complaint. And that is very important because it is against the spirit of notice pleadings. Plaintiff just mentioned that he could have amended the complaint. But at the time he raised that issue, the government had already moved for summary judgment or motion to dismiss. At that time, he would have needed to seek leave from the court pursuant to the Federal Rule Procedure 15 or written consent from the government. He did not do that. So if he wanted to change the scope, there was an opportunity for him to request. And the government takes issue with the notice because the plaintiff injected this bare-bones claim that the agency's interpretation was ultra-virus on December 4th. That is a mere 10 days before the close of briefing. And that is problematic. Again, that goes against the principles of fairness and undermines the very purpose of the spirit of the rules and the actual rules. So this is the type of unfair surprise that the procedure is designed to prevent. Second, as I mentioned, the claim was vague and it was vague in the summary judgment motion and it continues to be vague in this appeal stage. And it has transformed from an ultra-virus case to a question of whether the rule is interpretative or legislative. And the briefs are devoid of any analysis in the legal framework. There is no analysis to sustain the claim that, you know, this doesn't pass muster under our deference. A claim that it's ultra-virus, what do you take that to mean? Well, that is the burden is on the plaintiff. So that's why the government couldn't answer. Because in order to meaningfully answer, I have to respond to an argument. If there's nothing for me to respond. I understand that. But you were just saying it's an ultra-virus versus not being, you know, whether it's an interpretative rule. You were saying those are different arguments. I'm trying to figure out what is, what do you think his argument was in, just that it violates the regulation, ultra-virus, or outside the regulation. It doesn't matter what I think because it was not there. So I cannot meaningfully respond to that question. He said it's ultra-virus because the word's final merits do not occur. That is the complete argument. So as the court recognized earlier, Judge Costa, the regulations do say initial evidence. So if it's initial, it logically follows that there's something else initial. It's the beginning. So and what is most important here is that Mr. Amin presents an alternative interpretation that may, let's assume in our guendo, that may have support under the law. But that is insufficient to show that the current interpretation is arbitrary and capricious, that's not enough. And the DC court talked about that, elaborated more on that in the case of Visinkaya. So if Mr. Amin wants to change USCIS's interpretation, he must show that the current interpretation is arbitrary and capricious, and he has not shown that. In addressing Bulletini, Bulletini relies on a 1992 memo from an acting assistant commissioner. And that has been superseded by the policy memo. So, and again, courts have rejected the Bulletini approach, for example, in Visinkaya, but they have, the two-step approach has been recognized in Muni, which was decided in 1995, less than a year after Bulletini, and there, the court conducts a second-step determination, and it calls it the Totality of the Evidence Review. That's the heading in the case. So, as the court mentioned earlier, the three criteria, or at least three criteria out of ten, it's just a threshold. And that second part of the analysis has been in place since at least 1995. So, and also it is noteworthy that Mr. Amin does not really disagree with the final merits determination. He said in some case there could be one, but there's no clear standard that he proposes. And if we, if this court were to follow Bulletini, which is a district court case, it would result in an illogical conclusion. Creating a burden shift to USCIS to disprove eligibility is simply illogical. So how that would look is, I submit all the evidence, then USCIS has to conduct research, even in these esoteric fields. And I mentioned that in order, the plaintiff who is in that field is better positioned to explain his field and what his work means to the field. It would be problematic for USCIS to go Google what this esoteric field is and try to disprove. In this case, I would Google, nope, the walking drill was invented and was used by Exxon. Now, Amin would come back and say, no, it was me. So they would be playing back and forth, would be playing ball. But again, USC 1361 places the burden solely on the applicant to establish eligibility. And now, turning to the issue of remedy, I ask this court to affirm the judgment below. And again, if the court overturns the district court and remands back with instructions for the agency to overturn the decision, the court must consider first whether Mr. Amin proved that those three findings for USCIS were arbitrary and capricious. So if USCIS, so if the court finds that, for example, he did not reach the international claim, that is sufficient and the court may not look any further. That is, to be clear, the remedy is not approval of the visa. This visa category started in, what, 1990? Yes. So is it different than the one, because I was reading John Lennon. I mean, that was before then, but he, didn't he get a similar visa? What's the, what's, do you know the history of it? I don't. Okay. I don't know the history of John Lennon, but I will look it up after this. I thought that he got some, obviously not this one, because this was in 1990, but some type of similar, you know, Einstein visas, like. And there was big change in 1990, and I'm sorry, I apologize that I don't know what John Lennon received. So So I ask that, that this court affirm the district court's decision. All right, thank you, counsel. Mr. Green, your rebuttal. I'll remember about John Lennon, your honor, is that he was ordered deported. Presumably for marijuana use. I can't remember exactly what it was. So addressing some of opposing counsel's comments. Related to the, the, the patent issue, there are many reasons why a company either won't file for a patent on an invention, or won't pursue that patent all the way through. And he was no longer at the company when we filed the application, so that's probably why there's, there's not a patent on file. And also, probably didn't have his name on it. Patents often don't have the names of individuals who are involved. For all sorts of reasons. Opposing counsel mentioned, and, and brings this up in her brief, that she were a circle of acquaintances. Clearly, some of them were individuals that Mr. Amin knew. USCIS doesn't make a, a deal about this, other than, than mentioning it once in a while, that a, that a, an individual was an acquaintance. But there's one letter in particular, which is specifically not from an acquaintance. It's from Mr. Charles Chee, who is, who was at the time Mr. Amin's equivalent at CNOC, the, the Chinese National Oil Company, which, which does a lot of oil drilling, or did at the time in, in Western Canada. And and he discussed the modularization of the well pads that Mr. Amin had done. He called him a pioneer. This, this is a rival. This is not an acquaintance. This is, this is Mr. Amin's principal rival in the industry. Wrote a letter. Discussed the accomplishment. Discussed why it was difficult. Even discussed why CNOC had, had followed some of the same methods. And seen some success, but had not been able to achieve everything that Mr. Amin had achieved. So that's not a letter from an acquaintance. And, and should bear a lot of weight. She also indicated that our, our, we, we've brought up a, a bare bones claim of a, that this is a substantive rule requiring notice, notice and comment. In our 28-J letter of, of several days ago. And that's, there's this surprise argument doesn't, doesn't make any sense. We've been talking about the procedural rule as being invalid. From when we filed our motion for summary judgment. The the government is the one who indicated that they believed that the rule was valid as an interpretative rule. But no point has the government ever stated or explained or And, and Mooney, the government mentions Mooney. I don't have Mooney in front of me. Mooney's a great case. Mooney is an older case, and it involves a hockey player. And the, the, the concluding thesis of Mooney is you don't have to be Gretzky. That's what it is. He was a hockey player. He was a good hockey player. He wasn't the best hockey player. He'd bled a lot. He'd been wounded in the, in the service of hockey. And he wasn't Gretzky, but he was good enough. That, that's the, that's the idea of Mooney. I would encourage the, the court to read that case. It's one actually you read in law school. It's an interesting case. And oh, I, I, I wanted to say one more thing about interpretative rules. We, we cited some examples of rules that are proper, properly categorized as interpretative rules in our reply brief, just to get an idea of what an interpretative rule is supposed to be. One of the cases that we cited was Paralyzed Veterans of America, the D.C. Arena. That case involved an ADA regulation for sports arenas, and the DOJ had had to issue a rule interpreting the regulatory phrase, quote, lines of sight comparable to those for members of the general public. So, so the government is, is having to figure out what does it mean that a person in a wheelchair has to have a line of sight comparable to those for members of the general public, and they end up interpreting that phrase to mean seating that provides a clear view over standing spectators. That's an interpretation. This memo is, is not an interpretation. It's a substantive rule. It's, it's, if it had not differed significantly from the regulation or the way the regulation was interpreted, USCIS wouldn't have had to issue it in a policy memo. It's binding on the officers. It doesn't leave any discretion as to whether they're supposed to do the two-step inquiry. It's a, it's a substantive rule. Therefore, it needed to go through notice and comment. Therefore, it's not valid. Thank you, Your Honor. Thank you, Mr. Green. The case is submitted.